UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| VALLEY FORGE INSURANCE COMPANY, a corporation,<br><br>  Plaintiff,<br><br>  vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>  Defendants. | Case No: C 09-2007 SBA<br><br>**ORDER**<br><br>Dkt. 78, 80 |

Plaintiff Valley Forge Insurance Company ("Plaintiff") brings this instant insurance coverage dispute against Defendant Zurich American Insurance Company ("Defendant") to obtain reimbursement of defense costs and settlement amounts paid in an underlying state court action on behalf of Defendant's insured. The parties are presently before the Court on Defendant's Motion for Reconsideration, Dkt. 78, and Defendant's Second Motion for Partial Summary Judgment, Dkt. 80. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES both motions for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.   BACKGROUND**

The parties are familiar with the facts of this case, which are summarized only to the extent that they are relevant.

**A.   Factual Background**

In 2005, a demolition and construction project was underway at Britannia Seaport Center, located in Redwood City, California. Dkt. 33 ¶ 1. Slough Estates USA, Inc. was

the owner of the project.  Id. ¶ 2.  DES Architects & Engineers ("DES") was the architect of the project.  Id. ¶ 3.  DES' on-site engineer was Swee Yong-Tan ("Tan").  Id.  Hathaway Dinwiddie Construction Company ("Hathaway") was the general contractor for the project and its on-site daily superintendent was Gary Fox ("Fox").  Id. ¶4.  Hathaway was insured by Defendant.

The roofing subcontractor was Reinhardt Roofing, Inc. ("Reinhardt").  Id. ¶ 6.  Reinhardt was insured by Plaintiff.  Reinhardt had two supervisors, one for the roof canopy, and another for the main roof.  Id. ¶ 7.  Reinhardt's work under the subcontract called for demolition, removal and disposal of the existing roof.  Id., Ex. C at 31, 38, 49.

On October 11, 2005, four of Reinhardt's workers sustained injuries at the construction site when a canopy roof on which they were working collapsed.  Id. ¶¶ 20, 29, 34, 36.  At the time of the collapse, Tan and Fox were inspecting a gap in the canopy roof to assess its structural integrity, but neither ordered Reinhardt's workers to stop working.  Id.

On December 5, 2006, the four injured roofers sued Hathaway in state court.  Id. ¶25.  On behalf of Hathaway, Plaintiff paid defense costs and settlement amounts within its policy limits because the roofing subcontract called for Reinhardt to make Hathaway an additional insured under Plaintiff's policy.  Id., Ex. C at 31, 38, 49.  The subcontract also contained a provision requiring Reinhardt to indemnify Hathaway for acts or omissions arising from or in connection with Reinhardt's work under the subcontract, as long as Hathaway was not "solely negligent."  Id.,, Ex. C at 49.

Although Hathaway's work on the construction site was insured under its policy with Defendant, Defendant's policy had a clause that stated, if any other insurance covered Hathaway as an additional insured, then Defendant's policy would be excess over the other insurance (sometimes "excess only 'other insurance clause'").  Id., Ex. F at 11.  In light of the excess only "other insurance clause," Defendant refused to participate in the defense or settlement of the state court action against Hathaway on the ground that Hathaway was an additional insured under Plaintiff's policy.

### B. Procedural Background

On April 8, 2009, Plaintiff filed the instant action in California Superior Court, County of San Francisco. Dkt. 1 at 4. Plaintiff seeks reimbursement from Defendant for the amounts it paid in the state court action on behalf of Hathaway. Dkt. 1. Plaintiff claims that Hathaway was not an additional insured under Reinhardt's policy because the additional insured provision only applied if Reinhardt was solely negligent for the accident. Id. Plaintiff contends that Reinhardt was not solely negligent, and therefore Defendant's policy provides coverage to Hathaway. Id. Plaintiff seeks recovery based on claims for equitable contribution, equitable indemnity and equitable subrogation.

On May 7, 2009, Defendant removed the action to this Court. In December 2009, Defendant moved for partial summary judgment. Dkt. 31. In March 2010, Plaintiff opposed Defendant's motion, as well as filed a cross-motion for partial summary judgment. Dkt. 42. On September 22, 2010, the Court denied both parties' motions for summary judgment ("Order of 9/22/10"). Dkt. 61. Through their respective motions, the parties sought a determination as to whether Plaintiff was entitled to reimbursement from Defendant. At the center of this dispute was the question of whether Reinhardt was solely negligent, which, if so, would result in a finding that Hathaway was an additional insured under Plaintiff's policy, thereby precluding coverage under Defendant's policy because of its excess only "other insurance clause." In the Order of 9/22/10, the Court found that genuine issues of fact existed as to whether Reinhardt was solely negligent, and therefore denied both parties' partial summary judgment motions, finding that genuine issues of material fact existed as to which policy covered Hathaway for the accident.

On March 16, 2011, Defendant filed a motion for reconsideration of the Order of 9/22/10. Dkt. 78. Defendant argues that its insurance policy is an excess policy, and therefore Plaintiff is not entitled to reimbursement. Alternatively, Defendant argues that, if its policy is a primary policy, the indemnification agreement between Reinhardt and Hathaway precludes recovery by Plaintiff. On April 26, 2011, Defendant filed a second motion for partial summary judgment. Dkt. 80. In this motion, Defendant contends that

Plaintiff paid the defense costs and settlement amounts on behalf of Hathaway as a volunteer, and therefore Plaintiff is not entitled to any reimbursement from Defendant.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

A district court has the discretion to reconsider a prior order. Sch. Dist. No. 1J v. ACandS, Inc., Multnomah Cnty., Or., 5 F.3d 1255, 1262 (9th Cir. 1993). "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

Whether to grant or deny a motion for reconsideration lies within the discretion of the court. See McCarthy v. Mayo, 827 F.2d 1310, 1315 (9th Cir. 1987). In order to succeed on such a motion, the movant "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Mateo v. M/S Kiso, 805 F. Supp. 761, 786 (N.D. Cal. 1991) (Jensen, J.). The movant's arguments cannot be the same as those made earlier. Id. If a party inadvertently or deliberately failed to raise arguments earlier in the proceedings, the arguments are deemed waived. Id. The rule governing reconsideration was not meant to relieve any litigant of the consequences of a strategic or tactical decision that later proves improvident. Lloyd v. Carnation Co., 101 F.R.D. 346, 347 (M.D.N.C. 1984) ("'There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.'") (quoting Ackermann v. United States, 340 U.S. 193, 198 (1950)).

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.  A factual disputes is genuine if it "properly can be resolved in favor of either party."  Id. at 250.  Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for motion for summary judgment.  Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III. DISCUSSION

### A. Motion for Reconsideration

#### 1. Excess Policy vs. Excess Only "Other Insurance Clause"

Defendant's first argument in its motion for reconsideration is that its policy is an excess insurance policy, and therefore Plaintiff cannot recover against it because Plaintiff's policy is a primary policy. Plaintiff contends that Defendant's policy is not a true excess or secondary policy, but a primary policy with an excess only "other insurance clause," and therefore it may recover against Defendant.

##### *a)* *Excess Policy*

Under California law, primary insurance coverage is coverage where, upon the happening of the covered event, the insurer's duties under the policy attach immediately. Century Sur. Co. v. United Pac. Ins. Co., 109 Cal.App.4th 1246, 1255 (2003). With a true excess or secondary insurance policy, the insurer's duties attach only after a predetermined amount of primary coverage has been exhausted. Id.; Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1304-05 (1998) ("a true excess insurer—one that is solely and explicitly an excess insurer providing only secondary coverage—has no duty to defend or indemnify until all the underlying primary coverage is exhausted or otherwise not on the risk"); Olympic Ins. Co. v Emp'r Sur. Lines Ins., Co., 126 Cal.App.3d 593, 597-98 (1981) (stating excess or secondary coverage "attaches only after a predetermined amount of primary coverage has been exhausted"). An excess insurance policy will specifically describe the primary policies or the primary insurer. Century Sur. Co., 109 Cal.App.4th at 1255. The critical component of an excess insurance policy is that both the insurer and insured expressly understand that the policy is secondary to specific underlying coverage. Id.

Consequently, assuming that Plaintiff's policy covers Hathaway, if Defendant's policy is a true excess or secondary policy, then Plaintiff, as a primary insurer, is not able to obtain reimbursement from Defendant until all the coverage under Plaintiff's policy is exhausted. Because Plaintiff settled within its policy limits, if Plaintiff's policy covers

1  Hathaway and Defendant's policy is a true excess policy, Plaintiff will not be able to
2  recover from Defendant.   However, Plaintiff contends that Defendant's policy is not a true
3  excess policy, but a primary policy with an excess only "other insurance clause."  Plaintiff
4  is correct.

### b) "Other Insurance Clause"

6  A true excess or secondary insurance policy is different than a primary insurance
7  policy containing an "other insurance clause."  Century Sur. Co., 109 Cal.App.4th at 1255.
8  "Other insurance clauses" attempt to reduce the insurer's liability under the policy to the
9  extent that other insurance covers the same risk.  Id.  There are three types of  'other
10 insurance clauses" that do so.  Id.  The first type is called a "pro rata provision," which
11 limits coverage to the percentage that the insurer's policy limits bear to the total coverage
12 available to the insured under all applicable polices.  Id.  The second type is an "excess
13 only clause," which requires exhaustion of other insurance.  Id.  The third type is an
14 "escape clause," which extinguishes an insurer's liability if the loss is covered by other
15 insurance.  Id. at 1255-56.  Defendant's clause is the second type  of "other insurance
16 clause," i.e., the "excess only clause," in that the clause states that its policy is in "excess
17 over" any policy making Hathaway an additional insured.  See, e.g., Continental Cas. Co. v.
18 Zurich Ins. Co., 57 Cal.2d 27, 35 (1961)  ("other insurance clause" in insurance policy
19 stating that coverage in its policy would be "excess over" other insurance meant that its
20 coverage would only apply "after [the] primary coverage had been exhausted").

21 A policy with an excess only "other  insurance clause" is a *primary insurance*
22 *policy*, not a true excess or secondary insurance.  Reliance Nat. Indemn. Co. v. General Star
23 Indemn. Co., 72 Cal.App.4th 1063, 1077 (1999).  "It has been held that an 'other insurance'
24 clause dispute cannot arise between excess and primary carriers but only between insurers
25 on the same level."  Id. (citing Olympic Ins. Co., 126 Cal.App.3d at 597-98).  This is for the
26 reason that "other insurance clauses" are only relevant to policies applying at the same
27 level.  Id.

28

Given the distinction between a true excess policy and a primary policy with an excess only "other insurance clause," as a matter of law, the Court finds that Defendant's policy is a primary policy, and on this issue the Court modifies its Order of 9/22/10 to be consistent with this finding. In doing so, however, the Court notes that genuine issues of fact nonetheless remain with regard to whether Reinhardt was solely negligent, and therefore whether Defendant's "other insurance clause" would contractually preclude recovery by Plaintiff,[1] assuming for the sake of argument that the insurance policies controlled the determination of liability.

### 2. Indemnification Provision

The determination above that Defendant's policy is a primary policy establishes the foundation for the Court's consideration of Defendant's central argument in its motion for reconsideration. Defendant argues that, if its policy is a primary policy, under Hartford Casualty Insurance v. Mount Hawley Insurance Company, 123 Cal.App.4th 278 (2004), the indemnification provision between Reinhardt and Hathaway applies to prevent Plaintiff's recovery. Defendant maintains the indemnification provision requires Reinhardt to indemnify Hathaway for the accident, and therefore, Plaintiff cannot obtain reimbursement because such a recovery would negate the indemnification agreement. An overview of Hartford is instructive.

#### *a)   Overview*

In Hartford, a general contractor was sued by a subcontractor's injured employees, and the subcontractor's insurer defended and settled on behalf of the general contractor which it had been added as an additional insured under the subcontractor's policy. Id. 283-85. In addition, the general contractor and subcontractor had agreed to a nearly identical indemnification provision to the one in the case at bar in that the subcontractor agreed to indemnify the general contractor for any claims arising out of the subcontractor's work, as

---

[1] "Contractual terms of insurance coverage are honored whenever possible. The courts will therefore generally honor the language of excess 'other insurance' clauses when no prejudice to the interests of the insured will ensue." Fireman's Fund Ins. Co. v. Maryland Cas. Co., 65 Cal.App.4th 1279, 1304-05 (1998); see also Continental Cas. Co., 57 Cal.2d at 35 (honoring excess only clauses with regard to indemnification).

1 long as the general contractor was not solely negligent.  Id.  Similar to the instant action, when the subcontractor's insurer brought suit for reimbursement from the general contractor's insurer, the general contractor's insurer argued that the indemnification agreement, not the insurance policies, determined whether the subcontractor's insurer could recover.  Id.  The court in Hartford determined that the indemnification agreement controlled .  Id. at 290-91.

The Hartford court's analysis depended upon application of settled contractual principles.  "'The question whether an indemnity agreement covers a given case turns primarily on contractual interpretation.'"  Id. at 290 (quoting Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal.3d 622, 628-35 (2004)).  The intent of the parties as expressed in the agreement controls.  Id.  '"When the parties knowingly bargain for the protection at issue, the protection should be afforded'"  Id. (quoting Rossmoor Sanitation Inc., 13 Cal.3d at 628-35).   Despite arguments that the insurance contracts should govern the analysis of the case, the Hartford court stated that "[t]he case at bar concerns a contractual indemnity agreement, not theoretical noncontractual rights of indemnification between insureds."  Id. at 291.  Otherwise, the "indemnity provision would be effectively negated" by application of the insurance policies' terms.  Id.  "It would be unjust to 'impose liability' on [the general contractor's insurer] when the [general contractor] bargained with the [subcontractor] to avoid that very result as part of the consideration of the construction agreement.'"  Id. (quoting Rossmoor, 13 Cal. 3d at 634.).[2]

However, the principles discussed in Hartford do not "establish a general rule that a contractual indemnification agreement between an insured and a third party takes precedence over well-established general rules of primary and excess coverage."  Reliance Nat. Indemn. Co., 72 Cal. App.4th at 1081.  These principles only apply to insurers that share the same level of obligation on the risk as to the same insured.  Id. at 1080.  Thus, an

---

[2] Rossmoor involved a case where the court applied the indemnification agreement between the parties, as opposed to the "other insurance clauses" in the insurance policies.  Rossmoor, 13 Cal. at 628-35.

insurer of a primary insurance policy cannot step into the shoes of its insured to enforce an indemnification agreement against an insurer of a excess insurance policy covering the insured.  Id.  Consequently, for these principles to apply here, both policies must be primary insurance policies.  As discussed above, not only is Plaintiff's policy a primary insurance policy, but so also is Defendant's, i.e., a primary policy with an excess only "other insurance clause."

The principles of Hartford apply to the instant action.  As a result, if the terms of the indemnification provision between Reinhardt and Hathaway are satisfied, then the indemnification provision, not the insurance policies, will determine whether Plaintiff may recover from Defendant.  Nevertheless, the Court cannot grant reconsideration because, as will be discussed below, genuine issues of fact exist as to whether the terms of the indemnification provision have been satisfied.  For the indemnification provision to apply, Defendant must show that the accident arose out of or was in connection with Reinhardt's work and that Hathaway was not solely negligent.   Genuine issues of fact exist as to both of these issues.

### b) *Arising Out Of or In Connection With*

Before Hartford can apply to the instant action, Defendant must establish that the accident arose out of or was in connection with Reinhardt's work.  This means that Reinhardt's performance of the work under the subcontract must have led to the injury.  St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Sur. Lines, Inc., 101 Cal.App.4th 1038, 1052-53 (2002) (finding that, for the accident to have arisen out of the employee's work under the subcontract, "the employee [must have been] engaged in the activity called for by the subcontract or necessarily related thereto and it was the *performance of that activity* that led to the injury").  Genuine issues of fact exist as to whether the roofers were injured as a result of their performance of the work under the subcontract.

On the one hand, Plaintiff contends that the gap causing the roof to collapse resulted from structural problems and was unrelated to Reinhardt's work under the subcontract. Dkt. 42 at 3.  In particular,  according to Plaintiff, the roof collapsed because of weakening

in the dry rot in the old roof's plywood substrate, something that was not related to Reinhardt's work. Dkt. 33 at ¶¶29, 32, 34, 36. The weakened panels needing replacement were not located on the canopy that collapsed. Id. ¶36. If Plaintiff is able to prove that this was the cause of the accident and that Reinhardt had nothing to do with the accident, then a jury could find that Reinhardt's work was unrelated to the accident.

On the other hand, when the roof collapsed, Reinhardt's workers were involved in removing the roof from the canopy with the gap, which was their job under the subcontract. Dkt. 33 ¶¶ 28, 29, 31, 32, 34, 36. Their work on the roof may have contributed to the collapse of the canopy. Id. Furthermore, Reinhardt's supervisor knew of the gap, but did not stop the roofers from working for safety purposes. Id. A jury could find that these acts and omissions occurred as a result of Reinhardt's work under the subcontract and led to the collapse of the canopy roof and the injury of the roofers.

This evidence shows disputed facts exist about whether Reinhardt's performance of removing the canopy roof led to the accident. On summary judgment, "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial … Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions …." Anderson, 477 U.S. at 249-255; see also Vickers v. U.S., 228 F.3d 944, 954 (9th Cir. 2000) ("if the question whether 'the actor's conduct [was] a substantial factor in bringing about the plaintiff's harm' is 'open to reasonable difference of opinion,' … summary judgment was improper."). Accordingly, the jury must weigh the disputed evidence and make credibility assessment to resolve whether the accident arose out of or was in connection with Reinhardt's work under the subcontract.

### c) *Hathaway's Sole Negligence*

Under Hartford, Defendant must also show that Hathaway was not solely negligent. Hartford, 123 Cal.App.4th at 304. Defendant has failed to do so because genuine issues of fact exists with regard to the negligence of Hathaway as general contractor, DES as architect-engineer and Reinhardt as roofing subcontractor.

1  In Hartford, the subcontractor admitted that it was partly at fault, and therefore the
2  general contractor was not solely negligent. Hartford, 123 Cal.App.4th at 291-92, 301
3  (subcontractor's insurer consistently stated that the general contractor, at most, only was
4  forty to fifty percent negligent, and its own insured, the subcontractor, bore the remaining
5  fault with another party). Based on this admission, in Hartford, there were no genuine
6  issues of fact as to whether the general contractor was solely negligent, as it could not be
7  with the subcontractor's admission of partial fault.

8  This admission of the subcontractor in Hartford makes that case distinguishable
9  from the instant action, precluding a finding in favor of Defendant on its first motion for
10 partial summary judgment. In the instant action, the parties have not admitted to fault, but
11 have presented evidence as to the negligence of Hathaway, DES and Reinhardt. A jury
12 could weigh this evidence to find Hathaway solely negligent, or, alternatively, to find that
13 Hathaway and/or DES and/or Reinhardt were negligent, resulting in a finding that
14 Hathaway was not solely negligent. Because genuine issues of fact exist on Hathaway's
15 sole negligence, summary judgment is not appropriate.

16 As to Hathaway's sole negligence, the evidence shows Hathaway, as general
17 contractor, had the authority to order the workers of its subcontractor to stop working on
18 the roof while its superintendent, Fox, inspected it for safety purposes. Dkt. 33 ¶36 at 66:3-
19 12, 68:9-12. Hathaway admitted Fox had this authority, but did not use it. Id. Based on
20 this evidence, a jury could find Hathaway solely negligent. Nevertheless, genuine issues of
21 fact also exist that DES was negligent because its on-site engineer, Tan, was working with
22 Fox to inspect the roof and he did not order the workers to stop working. Id. ¶ 46:1-4. Tan
23 could offer no explanation for why he did not do so. Id. Based on this evidence, a jury
24 could conclude that Hathaway and DES were both negligent. For the reasons discussed in
25 the Order of 9/22/10, genuine issues of fact exist as to whether Reinhardt was solely
26 negligent. Dkt. 61 at 12-13. Reinhardt's supervisors knew of the gap and did not order the
27 roofers to stop working, even though the supervisors were also responsible for the safety at
28

the site. Dkt. at 12. In light of this evidence, a jury could find Hathaway, DES and Reinhardt negligent.

### 3. Conclusion

If Defendant establishes that the indemnification agreement applies, then Plaintiff will be entitled to no recovery against Defendant. If Defendant is not able to establish that the accident arose out of or was connected with Reinhardt's work or that Hathaway was not solely negligent, then the indemnification provision will not apply. Under these circumstances, the insurance policies will take effect. The question then will be whether Hathaway was an additional insured such that Plaintiff's policy covers Hathaway, which will only be the case if Reinhardt was solely negligent. If the indemnification agreement does not apply and Reinhardt is not solely negligent, then Plaintiff will be entitled to recover from Defendant.

## B. Second Motion for Partial Summary Judgment

In its second motion for partial summary judgment, Defendant states Plaintiff admitted that, at the time it settled the state court action, Plaintiff did not have facts to believe Reinhardt faced actual liability for negligence, potential liability for negligence or reasonably apparent liability for negligence. Dkt. 80 at 4; Dkt. 80-1 ¶¶3-4, Exs. B&C.[3] Defendant claims that, because Plaintiff did not believe Reinhardt faced any liability in the state court action, Plaintiff paid defense costs and settlement amounts for Hathaway, who was only an additional insured under Plaintiff's policy for Reinhardt's sole negligence, as a "volunteer." The Court rejects Defendant's argument that Plaintiff is not entitled to recovery as a volunteer.

"If [an insurer] faced neither actual, potential nor reasonably apparent liability [in a suit] then it would be a volunteer in settling" and would not be entitled to any recovery. Aetna Life & Cas. Co. v. Ford Motor Co., 50 Cal.App.3d 49, 52-54 (1975). However, an insurer who makes payment is not a volunteer when a dispute over which policy applies

---

[3] Defendant provides Plaintiff's responses to requests for admission to prove their assertion. Dkt. 80-1, ¶¶ 3-4, Exs. B&C.

exists:

> The Court of Appeal concluded the comprehensive liability insurer was not a volunteer: "Even though there was no legal obligation on plaintiff to make the payment it nevertheless had an interest to protect in making it. That interest arose from the fact that there was a dispute between it and defendant as to which policy, plaintiff's or defendant's, covered the accident.["]

Chicago Title Ins. Co. v. AMZ Ins. Servs., Inc., 188 Cal.App.4th 401, 433 (2010).

In the instant action, Plaintiff attempted to involve Defendant in the defense and settlement of the state court action, but Defendant refused to become involved. Plaintiff's position was that Hathaway was not an additional insured because Reinhardt was not solely negligent. Defendant's position was the opposite. The parties' disagreement over whether Hathaway was an additional insured under Plaintiff's policy shows the parties were (and still are) disputing which insurance policy applies. Further, the current action emphasizes that, in fact, the parties dispute the issue of which policy applies, and the existence of genuine issues of fact show that this issue is not easily resolvable. In light of the dispute over which policy applies, Plaintiff's payments were not as a volunteer.

Further, a volunteer is defined as a stranger or intermeddler without an interest to protect and under no legal obligation to make payment under the circumstances. State Farm Fire & Cas. Co. v. Cooperative of Am. Physicians, Inc., 163 Cal.App.3d 199, 203-204 (1984). When the allegations of the complaint result in a duty to defend, and, absent a final judgment of non-coverage under the policy, a duty to settle the case, an insurer has a legal obligation to defend and settle or face exposure to bad faith claims by the insured. Id. When an insurer makes payments to satisfy its legal obligation to defend and settle and to protect its interest in safeguarding against a bad faith suit, an insurer is not making the payments as a volunteer. Id. (court stating that it "quickly reject[s] the notion [that the insurer] was a volunteer in settling the [underlying] action[,]" in light of the insurer's duty to defend and indemnify).

The only reason that Reinhardt was not named a defendant in the state court action was because of the exclusive remedy of worker's compensation. Genuine issues of fact exist as to whether Reinhardt was, in fact, negligent. If a jury determines Reinhardt was

solely negligent in the instant action, then Plaintiff had a duty to defend Hathaway and to settle on its behalf. This potential exposure, even if not ultimately found to exist, gave Plaintiff an interest to protect, and consequently it did not act as a volunteer.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Reconsideration is DENIED.

2. Defendant's Second Motion for Partial Summary Judgment is DENIED.

3. This Order terminates Docket 78 and 80.

IT IS SO ORDERED.

Dated: July 13, 2011

                                      SAUNDRA BROWN ARMSTRONG
                                      United States District Judge